UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD G. SPANGLER,                     )
                                        )
            Plaintiff,                  )   Case No. 1:06-cv-213
                                        )
v.                                      )   Honorable Robert Holmes Bell
                                        )
JILL CREGG et al.,                      )
                                        )
            Defendants.                 )
_____)

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

I.    Factual Allegations

Plaintiff is presently incarcerated at the Muskegon Correctional Facility (MCF). Plaintiff's present complaint concerns his parole denial on two occasions, and his classification to Security Level II.[1] Plaintiff is suing Jill Cregg, MCF records supervisor; Shirlee Harry, MCF Warden; Patricia Caruso, Michigan Department of Corrections (MDOC) Director; and John Rubitschun, Chairman of the Michigan Parole Board.

Following a jury trial in the Van Buren County Circuit Court, Plaintiff was convicted of larceny in a building and was sentenced to a term of imprisonment of two to eight years. He subsequently pleaded guilty to receiving and concealing weapons and being a felon in possession of firearms, and he was sentenced to imprisonment of 1-to-10 years and 1-to-5 years, respectively. Plaintiff has a Felony Suspect Detainer in his MDOC file, which was issued by the Michigan State Police in connection with its investigation of a double homicide that occurred in Van Buren County in August 2002. Plaintiff alleges that the "Felony Suspect Detainer" caused him to be denied parole in August 2004 and August 2005, although he had received a parole guideline score of 9, which calculates to a high probability of parole.[2] Plaintiff additionally alleges that despite his Security

---

[1] In the Michigan Department of Corrections, security classifications, from least to most secure, are as follows: Levels I, II, III, IV, V, VI, and segregation. MICH. DEP'T OF CORR., Policy Directive 05.01.130, ¶ H (effective May 28, 1996).

[2] In both 2004 and 2005, the parole board gave as its substantial and compelling reason for departing from the guidelines that: "P[laintiff] has pending felony charges and is under investigation for another serious case. P[arole] B[oard] does not have assurance at this time the risk to the public is reduced." The parole board's reference to "pending felony charges" relates to two additional detainers in Plaintiff's MDOC file. One detainer was revoked on April 7, 2003, when Plaintiff pleaded guilty to the firearms charges, and the other was revoked on November 19, 2004, when he was acquitted after a jury trial of the charge of second-degree home invasion. That the records department had failed to remove these two detainers from Plaintiff's file was resolved through the grievance process.

Level I rating, he received a Security Level II placement because of the Felony Suspect Detainer in his file. Plaintiff claims that only prisoners with a pending felony charge or who are awaiting sentencing on a felony conviction are precluded from being classified to Security Level I.[3] He argues that merely being a suspect in a four-year-old investigation is not sufficient to deny him parole or security Level I placement.

Plaintiff seeks compensatory damages, and an order directing Defendants to conduct both a new parole hearing and a new confinement screening review in which the Felony Suspect Detainer is not considered.

II.   Exhaustion

Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). Issues involving the parole process may be grieved. *See* MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ E (may grieve "alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant") (effective 12/19/03). To satisfy the exhaustion requirement, the plaintiff must have presented the issues he raises in his complaint and named each of the Defendants at Step I of the grievance process. *See Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001); *Burton v. Jones*, 321 F.3d 569, 574-75 (6th Cir. 2003); *Thomas v. Woolum*, 337 F.3d 720, 735 (6th Cir. 2003); *Vandiver v. Martin*, No. 02-1338, 2002 WL 31166925, at *2 (6th Cir. Sept. 27, 2002) ("The issues[plaintiff] may raise, and the defendants he may name, in his lawsuit are limited to the specific issues raised,

---

[3] MDOC policy provides that: "Prisoners with a pending felony charge or who are awaiting sentencing on a felony conviction" shall not be classified to Level I "unless approved by the CFA Deputy Director or designee." MICH. DEP'T OF CORR., Policy Directive ¶ 05.01.130(U)(2) (effective Mar. 1, 2004).

and the specific individuals mentioned, in his grievance."). Plaintiff grieved the inclusion of the Felony Suspect Detainer through Step III, but failed to name any of the Defendants in his grievance. His claim is therefore not exhausted. Nonetheless, courts need not first require exhaustion of available administrative remedies when the claim may be dismissed because it is, "on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c)(2); *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998). Because Plaintiff's complaint fails to state a claim upon which relief can be granted, the Court will dismiss his action without first requiring Plaintiff to exhaust any available administrative remedies.

### III.   Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

#### A.   **Parole**

A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983. *See*

*Preiser v. Rodriguez*, 411 U.S. 475, 484, 493 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody). The Supreme Court has held that a state prisoner cannot make a cognizable claim under § 1983 for an alleged unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *see also Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997). However, in *Wilkinson v. Dotson*, 125 S. Ct. 1242, 1248 (2005), the Supreme Court clarified the *Heck* rule, finding "that a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – if success in that action would necessarily demonstrate the invalidity of confinement or its duration.") (emphasis in original). Plaintiff does not seek release from prison; rather, he requests a new parole hearing. As a consequence, under *Wilkinson*, his success in the action would not necessarily demonstrate the invalidity of his continued confinement, so his action does not appear to be *Heck*-barred. Nevertheless, assuming that Plaintiff's action is cognizable under § 1983, it fails to state a claim.

Plaintiff's claim arises under the Fourteenth Amendment Due Process Clause. To sustain a due process claim, Plaintiff must first establish that eligibility for parole is a recognized liberty interest, entitled to protection by the Due Process Clause. *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *see Bd. of Pardons v. Allen*, 482 U.S. 369 (1987). A prisoner's unilateral expectation,

particularly where prison officials retain complete discretion regarding an ultimate determination, does not create a constitutionally protected entitlement or liberty interest. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Liberty interests may arise from the Constitution itself or from the provisions of state law. *See Hewitt v. Helms*, 459 U.S. 460, 466 (1983). A prisoner has no constitutional or inherent right to be released on parole before the expiration of the prisoner's sentence. *Greenholtz v. Inmates of the Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). The state is therefore free to institute parole systems, but it has no duty to do so. *Id.*; *see Rose v. Haskins*, 388 F.2d 91, 93 (6th Cir. 1968). A prisoner has a liberty interest in the possibility of parole if, but only if, state law creates a legitimate expectation of parole release by the use of mandatory language limiting the discretion of the parole board. *See Allen*, 482 U.S. at 373-75. In the absence of a state-created liberty interest, the parole board can deny release on parole for any reason or no reason at all, and the Due Process Clause has no application. *See Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 236 (6th Cir. 1991).

The Sixth Circuit Court of Appeals has authoritatively held that the Michigan system does not create a liberty interest in parole. *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc). In unpublished decisions following *Sweeton*, the Sixth Circuit has repeatedly held that particular parts of Michigan's statutory parole scheme do not create a liberty interest in parole. *See Fifer v. Michigan Dep't of Corr.*, No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Vertin v. Gabry*, No. 94-2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995); *Leaphart v. Gach*, No. 95-1639, 1995 WL 734480, at *2 (6th Cir. Dec. 11, 1995); *Janiskee v. Michigan Dep't of Corr.*, No. 91-1103, 1991 WL 76181, at *1 (6th Cir. May 9, 1991); *Neff v. Johnson*, No. 92-1818, 1993 WL 11880, at *1 (6th

Cir. Jan. 21, 1993); *Haynes v. Hudson*, No. 89-2006, 1990 WL 41025, at *1 (6th Cir. Apr. 10, 1990). Further, the Michigan Supreme Court has recognized that there is no liberty interest in parole under the Michigan system. *Glover v. Michigan Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Until Plaintiff has served his maximum sentence, he has no reasonable expectation of liberty. In the absence of a liberty interest, even an allegation of arbitrary or capricious denial of release on parole states no federal claim. *See Haynes*, 1990 WL 41025, at *1. In the absence of a liberty interest, Plaintiff fails to state a claim for a violation of his procedural due process rights.

**B.     Security Classification**

Plaintiff also claims that he was wrongfully denied Security Level I placement because of the Felony Suspect Detainer in his record. To determine whether a liberty interest is implicated in a prison setting, the interest must be limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1985). The Supreme Court has repeatedly held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) ("[A]n inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State"); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 244 (1976). The Sixth Circuit has followed the Supreme Court's rulings in a variety of security classification challenges. *See*, *e.g.*, *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) (a prisoner's increase in security classification because of his designation as a member of a security threat group failed to state a constitutional claim); *Cash v. Reno*, No. 97-5220, 1997 WL 809982, *2 (6th Cir. Dec. 23, 1997) (prisoner's allegation that he was placed in a security level higher than warranted based on the

information contained in his prison file failed to state a due process claim because he had no constitutional right to be held in a particular prison or security classification). In the absence of a recognized liberty interest, placing Plaintiff in higher security level facility or increasing his security classification raises no issue of constitutional magnitude. Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because, "process is not an end in itself." *Olim*, 461 U.S. at 250. Furthermore, it cannot possibly be argued that Level II classification imposes a "significant and atypical hardship" on a prisoner, as Level II affords a high degree of freedom and is the second least restrictive security level in the state system.

Finally, Defendants' alleged failure to comply with the administrative rules does not itself rise to the level of a constitutional violation. *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687 at *1 (6th Cir. April 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest).

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action fails to state a claim and will therefore be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $255 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is

barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $255 appellate filing fee in one lump sum.

        This dismissal counts as a strike for purposes of 28 U.S.C. § 1915(g).

        A Judgment consistent with this Opinion will be entered.


Date:    April 6, 2006                    /s/ Robert Holmes Bell
                                                            ROBERT HOLMES BELL
                                                            CHIEF UNITED STATES DISTRICT JUDGE